UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 06-00236-01 (GK) |
| | : | |
| v. | : | |
| | : | |
| KYLE BARTOLAIN | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing.

**I.    BACKGROUND**

On August 18, 2006 the defendant pleaded guilty to Traveling with the Intent to Engage in Sex with a Minor child, in violation of 18 U.S.C. § 2423(b). The undisputed statement of facts showed that on July 11, 2006, while inside his residence in Alexandria, Virginia, Bartolain entered into a romantic chat room for the Washington, D.C. area, and began communicating with a person who identified herself as a thirteen year-old girl (hereinafter referred to as "child"). The child was in fact a D.C. Metropolitan Police Officer acting in an undercover capacity.

During the course of the chat that occurred over a three day period, Bartolain sent the child a picture of himself. The child sent Bartolain a picture of herself -- the Court has already seen the picture of the child that the undercover sent to Bartolain, depicting a very young looking child in a panda bear bathing suit. Bartolain asked the child if she was still a virgin and whether she "ever had [her] vagina licked." Bartolain told the child that he wanted to have sexual intercourse with her, explaining: "Yeah, it will hurt, I'll be real gentle though, and if it hurts you too bad, we don't have to go all the way, we can do other stuff, like oral sex...". Ultimately,

1

Bartolain agreed to meet the child for sex, at her house, where she would be unsupervised on July 14, 2006 in Washington, D.C. Indeed on that date, Bartolain traveled from Virginia to Washington, D.C. to the designated meeting place. Upon his arrival, he was arrested. A search revealed that Bartolain had purchased a brand new package of condoms and KY warming fluid.

. II.    SENTENCING CALCULATION

    A    Statutory Maximums

Pursuant to Title 18, United States Code, Section 2423(b) carries a maximum penalty of up to thirty years imprisonment, and a maximum term of supervised release of five years.

    B.    Sentencing Guidelines Calculation

The Guidelines calculation utilized in the Presentence Report ("PSR") calculates the defendant's total offense level at 23. See PSR ¶ 27. The PSR calculates the defendant's criminal history as Category I. See PSR ¶ 30. The guideline range for the defendant is calculated at 46 to 57 months.

III.    GOVERNMENT'S RECOMMENDATIONS

    A.    Acceptance of Responsibility

The government agrees with the PSR ¶ 26 that the defendant's base offense level should be decreased by three points pursuant to Section 3E1.1 of the Sentencing Guidelines since he accepted responsibility for his conduct.

    B.    Application of the Federal Guidelines post-Booker

It is the government's position that the Court should impose a sentence within the guidelines range. In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth

Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004). As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, Title 18, United States Code, Section 3553(b)(1). Booker, 125 S. Ct. at 756. However, the Court expressly refused to invalidate the Guidelines in their entirety. To the contrary, the Court upheld the remainder of the Guidelines as the most appropriate benchmark for informing courts as to the most reasonable sentence for a particular defendant who has committed a particular crime. Indeed, it remains the case that if the sentencing court imposes a sentence that is outside the range as set forth in the Guidelines, the Court must state in a written order of judgment and commitment the specific reason for the imposition of a sentence different from that described in the Guidelines. See 18 U.S.C. Section 3554(c)(2). The sentence will then be subject to review by courts of appeals for "reasonableness." Id. at 769.

In Booker's wake, this Court must continue to resolve disputed questions of fact and law and correctly calculate a defendant's sentence under the existing Sentencing Guidelines. See Fed. R. Crim. P. 32(i)(3)(B) (court must rule on unresolved objections to the Presentence Report or determine that resolution not necessary to sentencing). "The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Booker, 125 S. Ct. at 767 (citing 18 U.S.C. Sections 3553(a)(4)&(5) (Supp. 2004)). In light of this mandate – and the continued requirement of written explanations for sentences that fall outside of the range called for by the Guidelines and the new standard of "reasonableness" review – it is plain that a sentence within the Guidelines, while not required, is reasonable per se. Not only is a sentence within the Guideline range reasonable per se, but it also accommodates the goal, endorsed by both Congress and the Supreme Court, of meting out fair

3

and uniform sentences.

The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of two decades of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. The Guidelines, consisting of offense characteristics and various grounds for departure, address the considerations relevant to sentencing, as articulated in 18 U.S.C. Section 3553(a), such as "the nature and circumstances of the offense and the history and characteristics of the defendant"; "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; © to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

Indeed, the Sentencing Commission formulated the Guidelines only after initially canvassing prior sentencing practice and attempting to identify and assign weights to all the factors – both aggravating and mitigating – that judges traditionally used in determining an appropriate sentence. See United States Sentencing Comm'n, Supplementary Report on the Initial Guidelines and Policy Statements 16-17 (1987); see also 28 U.S.C. Section 994(m) (requiring Commission to "ascertain the average sentences imposed . . . prior to the creation of the Commission"); Comprehensive Crime Control Act of 1984, S. Rep. No. 98-225, at 168 (Commission should produce a "complete set of guidelines that covers in one manner or another

4

all important variations that commonly may be expected in criminal cases"). Moreover, since the Guidelines were adopted, the Sentencing Commission has continued to study district court and appellate sentencing decisions and to "modify its Guidelines in light of what it learns." Booker, 125 S. Ct. at 766; see id. at 767 (Sentencing Commission will continue "collecting information about actual district court sentencing decisions . . . and revising the Guidelines accordingly").

It thus remains true that, absent unusual circumstances, the sentence in a criminal case should fall within the Guideline range as determined by this Court. Each Supreme Court Justice in the various opinions in Booker recognized the express national policy goals, as articulated by Congress, that sentences be uniform across the country, to the extent possible, and that sentences be based on the offender's actual conduct and history. See, e.g., id. at 761 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at 759 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at 783 (dissenting opinion of Stevens, J.) ("The elimination of sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at 789 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity."). Since the Guidelines currently represent the only extant benchmark to encourage uniformity and thus the only tool to implement Congress' vision of sentencing uniformity and fairness, Guideline range sentences are currently the only mechanism available to implement Congress' basic statutory goals.

Booker, to be sure, departs from the prior practice of automatic reversal that would have

accompanied the failure to sentence a defendant within the Guidelines.  Such a sentence will now be reviewed instead for its "reasonableness."  See Booker, 125 S. Ct. at 764.  Nevertheless, the Guidelines -- resulting as they do from years of study of sentencing practices, crime statistics, national crime policy, and consideration of the factors that inform sentencing, see 18 U.S.C. Section 3553(a) – provide the most concrete yardstick against which to measure what would be unreasonable.  Booker not only prevents courts from substituting their individual judgment about the appropriateness of the Guidelines range without explaining with specificity their reasoning, Booker also continues to subject the explanation of the decision to sentence outside of the correctly calculated range to a court of appeals reasonableness review.  See 18 U.S.C. Section 3553(c) (mandating consideration of the Guidelines); 18 U.S.C. Section 3553(c)(2) (mandating written explanations for imposing a sentence outside of the applicable Guideline range); 18 U.S.C. Section 3742(f)(1) (mandating court of appeals to set aside a sentence imposed as a result of an incorrect application of the Guidelines); 18 U.S.C. Section 3742(f)(2) (mandating court of appeals to set aside a sentence outside the Guidelines range when the district court fails to provide a required statement of reasons in the judgment and commitment order).

  Fidelity to the Guidelines best accomplishes the purpose of fair and consistent sentencing and should occur absent unusual circumstances.  This is so, said the court in United States v. Wilson, 350 F. Supp. 2d 910 (D. Utah, 2005) – the day after Booker was decided – because the Guidelines represent the product of an expert commission, that has studied the sentencing process at great length, under the specific mandate of Congress, to fashion recommended sentences that carry out the purposes defined by Congress.  The resulting Guidelines, Wilson held, plainly reflect the public's will, as expressed by their democratically elected

representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to congressional preference. <u>Wilson</u> further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness. For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence. In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." <u>Id.</u> at 912. A non-Guidelines sentence would, in the ordinary or usual case, unreasonably thwart legislative intent – in particular, the overriding concern with uniformity and the prevention of unfair disparities for similarly-situated defendants.

In this case, as explained further below, no unusual circumstances exist that warrant an exception to the preference for guideline sentencing. Therefore, the government respectfully recommends that the Court sentence the defendant within the Federal Guidelines range calculated in the Presentence Report, in addition to the imposition of sentence for the D.C. offenses.

This Court should consider the fact that this grown man thought that he was going to have sex with a child, who, based on the picture that was sent to him, looked like a very young pre-pubescent little girl. For this he should be punished.

Accordingly, the government believes that a prison term of within the guideline range is appropriate.

IV. **CONCLUSION**

Wherefore, the government respectfully requests that the Court sentence the defendant to a prison term within the guideline range.

Respectfully submitted,

JEFFREY A. TAYLOR
United States Attorney
Bar No. 498610

_____
JULIEANNE HIMELSTEIN
Assistant United States Attorney
Major Crimes Section, Mass. Bar No. 417-136
555 4th Street, N.W. Room 4832
Washington, DC 20001
Phone: 514-8203
Fax: 353-9414


CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I caused a copy of the foregoing to be served upon the attorney for the defendant, Mark Petrovich, BY FAX AT 703-503-5777, this ___ day of December, 2006.

_____
JULIEANNE HIMELSTEIN
Assistant United States Attorney